Filed 5/27/16  In re B.I. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re B.I. et al., Persons Coming Under the Juvenile Court Law. | B267440 |
| _____ | (Los Angeles County Super. Ct. No. DK10500) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Petitioner and Respondent, | |
| v. | |
| M.A, | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Thomas Grodin, Commissioner.  Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

_____

M.A. (Mother) appeals[1] from the juvenile court's orders, arguing that the court erred when it found that venue was proper in Los Angeles County.  We disagree and hold that, because the children "were found" in Los Angeles County venue was proper.

## FACTS AND PROCEEDING BELOW[2]

A. *Initial Referral and Investigation*

On March 18, 2015, the family came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) based on a hotline referral alleging general neglect of B.I. (a girl, age 11), Sh.I (a girl, age 6) and Su.I (a boy, age 4) by their parents, M.A. (Mother) and D.A. (Father).  The referral claimed that the parents had a history of fleeing authorities, the children were physically and emotionally abused by the parents, and that there was no one to care for the children because the parents used methamphetamines daily.  The petition also alleged that the parents engaged in domestic violence in the children's presence.

DCFS found that in February 2015, the children's maternal grandmother and aunt, who both resided in Los Angeles, traveled to Oakland, where the parents and children resided, to bring Mother and children to Los Angeles in order for Mother to attend a drug treatment program while the children lived with their aunt nearby.  About three weeks into the drug treatment program, Father came to Los Angeles to visit Mother, and she left the program.  A few days later, the parents picked up the children from their aunt's home.  The eldest child called the aunt, crying and asking if the aunt could retrieve them.  Although the aunt picked up the children, the maternal grandfather returned them to the

---

[1] The children's father is not a party to this appeal.  Father's court-appointed appellate counsel initially filed an opening brief on Father's behalf, but subsequently filed a motion to withdrawal that brief, and, instead, filed an opening brief pursuant to *In re Phoenix H*. (2009) 47 Cal.4th 835.  On February 26, 2016, we issued a no merit brief letter informing Father he had 30 days to "submit by letter or brief any grounds of appeal contentions, or arguments which [he] wishes this court to consider."  Father submitted no such brief or letter.

[2] Because the sole issue on appeal is whether venue was proper in Los Angeles County, we limit our statement of facts and proceedings to those relevant to that issue.

parents after Father threatened to report to authorities that the grandparents had kidnapped the children.

The children's social worker (CSW) assigned to the case, called the older children's schools to investigate the claims raised by the hotline referral. Sh.I.'s principal expressed numerous concerns, including that Sh.I. came to school poorly groomed, wearing dirty clothes and complaining of hunger because she had not been fed at home. The principal reported that Mother appeared to be on drugs and that the family was residing in a warehouse without electricity or running water. Employees at B.I.'s school reported similar observations and concerns.

The CSW repeatedly called the parents and left messages for them requesting that they contact DCFS, but neither Father nor Mother responded.

B.      *Detention & Subsequent Investigation*

On March 25, 2015, DCFS filed a Welfare and Institutions Code[3] section 300 petition alleging that the children had suffered, and there was a substantial risk they would suffer, serious physical harm. The children's whereabouts were unknown and DCFS asked the court to order that they be detained and issue protective custody warrants. On that same date, the court conducted a detention hearing, found the parents were at-large with the children, and made detention findings and orders. The court also issued protective custody warrants for the children and arrest warrants for the parents.

On March 30, 2015, the CSW received a call from a family friend in Los Angeles, reporting the location of the family and stating that she was concerned that the parents were unhealthy and were not caring for their children. That day, the police picked up the children in Los Angeles, and DCFS transported them to their paternal aunt's home.

On April 1, 2015, the juvenile court recalled the arrest and protective custody warrants, and ordered monitored visitation for the parents.

---

[3] All further statutory references are to Welfare and Institutions Code unless otherwise specified.

The children remained detained with their paternal aunt in Los Angeles, who reported that the parents had called the children approximately four or five times but had not visited them.

Mother and Father continued to evade DCFS and the CSW was not able to speak with them to garner any information for the investigation.

C.    *Hearings*

On May 11, 2015, the parents made their first appearance in court and were appointed counsel. The parents provided the court with their address in Oakland, and Father's counsel stated that the parents lived in Oakland and, therefore, Alameda County and not Los Angeles County was the proper venue. Counsel requested the court to "transfer venue today or order [DCFS] make phone calls to begin that process."

The juvenile court ordered DCFS to provide the parents with referrals for programs in Oakland and to create a schedule for contact between the children and parents. The court continued the jurisdiction and adjudication hearing to June 30, 2015, because the parents were making their first appearance that day and DCFS had no opportunity to meet with or interview them. It also denied the request to transfer the case to Alameda County, stating that venue was appropriate in Los Angeles County.

On June 30, 2015, the court again continued the case to August 25, 2015, because the parents had contacted DCFS and informed it that they were having car problems and would not be able to attend the scheduled hearing.

At the August 25, 2015 hearing, no party disputed that the children were "found" in Los Angeles County. After hearing argument, the court sustained the DCFS's section 300 petition as pled, removed the children from the parents' custody and ordered them suitably placed within the discretion of DCFS. The court ordered Mother and Father to participate in drug and alcohol programs, random drug testing, and domestic violence programs. The court also ordered monitored visitation for the parents. The parents requested that the case be transferred to Alameda County, and this time the court granted the request and ordered the transfer. Mother filed this appeal.

4

## DISCUSSION

Mother's sole argument on appeal is that the court erred when it determined that venue was proper in Los Angeles County. We disagree.

Section 327 defines the proper venue for a dependency proceeding: "Either the juvenile court in the county in which a minor resides *or* in the county where the minor is found . . . is the proper court to commence proceedings under this chapter." (Italics added.)

Mother claims that venue was improper in Los Angeles because both the children and the parents resided in Oakland. Residency, however, is not the only basis for venue. Another basis for venue is where the children are "found."[4] Here, it is undisputed that the children were "found" in Los Angeles County, a statutory basis for venue.

Mother, however, argues that the court's order, designating Los Angeles as the venue for the case rather than Oakland, where the parents resided, made visitation difficult and prolonged reunification. The statutory scheme governing dependency proceedings takes parental residence into account and allows for the discretionary transfer of venue in such circumstances. Pursuant to section 375, subsection (a), a juvenile court *may* transfer a juvenile case to the county where the parent resides at any time "after the court has made a finding of the facts upon which it has exercised its jurisdiction over the [children]." (§ 375, subd. (a)); see *In re J. C.* (2002) 104 Cal.App.4th 984, 992.) Both the statutory language and courts interpreting that language require that prior to transferring a case, the juvenile courts must *first* make a finding of the facts upon which it has exercised its jurisdiction. (§ 375, subd. (a)); *In re Hadley B.* (2007) 148 Cal.App.4th 1041, 1049.)

Here, based on the parents' own delays, the August 25, 2015 hearing was the *first* opportunity that the court had to make a finding regarding jurisdiction of the children.

---

[4] It is unclear where the children resided at the time of the detention because Mother brought them to Los Angeles County to live with extended family while Mother attended a drug rehabilitation program for an indefinite period of time. We need not reach this issue, however, because venue was based on the children being "found" in Los Angeles County.

Although the children were detained by DCFS on March 30, 2015, the parents fled and failed to communicate or meet with DCFS. On May 11, 2015, the parents made their first appearance in court and, prior to that date, made no mention of transfer. The court continued the jurisdiction hearing to June 30, 2015 in order for DCFS to have the opportunity to interview the parents before the court made a finding of fact regarding DCFS's petition. The parents failed to appear at the hearing. The hearing was continued to August 25, 2015. At the August 25, 2015 hearing, the parents appeared. The court asserted jurisdiction, sustained DCFS's petition and, based on its discretion, determined that transfer was appropriate to Alameda County, the county where the parents resided. Accordingly, any delay in the court's discretionary decision to transfer was the result of the parents' *own* actions—fleeing Los Angeles, refusing to communicate or meet with DCFS, and failing to attend the June 30, 2015 jurisdiction hearing.

## DISPOSITION

The juvenile court's orders are affirmed.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:



CHANEY, J.



JOHNSON, J.